Catherine Riley vs. State Line Steamship Company.

No. 5449.

CATHERINE RILEY, TUTRIX, VS. STATE LINE STEAMSHIP COMPANY.

The owners of a vessel are not liable to the employee of a stevedore who has full charge of the unloading of the vessel, for injury to the employee caused by defective tackle furnished by the vessel, when it is shown that the tackle had no *apparent* defect and that the stevedore was an experienced, and competent one, who had the exclusive employment of his laborers, and control of the work. The owners are not liable for any injury caused by a defect in the tackle, arising from the ordinary wear and tear, unless a knowledge of such defect is brought home to them.

APPEAL from the Sixth District Court, parish of Orleans.  *Saucier, J.* Trial by jury.

*Frank McGloin* and *J. O. Nixon, Jr.,* for plaintiff and appellee.

*H. H. Bryan, Jr.,* for defendants.

The opinion of the court was delivered by

SPENCER, J.   Plaintiff brings this suit to recover $25,000 damages, caused by the death of John Moriarty, her husband; $10,000 of the sum claimed is damage done to the plaintiff and her children themselves; $15,000 for damage done to John Moriarty, the right to which was transmitted to them at his death.

The facts are that while the steamship "Alabama," of the defendants' line, was being loaded at New Orleans, in May, 1873, an iron wheel, over which worked the rope for raising and lowering freights into the hold of the ship, and which was of course suspended above the hatch, broke or bursted into two pieces—one of which, descending, fell upon the head of John Moriarty who was at the time employed in the hold, assisting in stowing the cargo, from the effects of which blow he died very shortly after.

The contract for loading and unloading the vessel on that trip was taken by Joseph Cooper, an experienced stevedore, and he had full and entire control of the work. The vessel, as customary, furnished "the gins," as this hoisting apparatus was called. Cooper employed and controlled absolutely his own laborers. Among others, he employed Brookman, a boss screwman, who in his turn employed the said Moriarty, and it was as such employee that he was working at the time of the injury.

The vessel was a very fine one, entirely new, and this her first voyage. It is shown that the vessel was well supplied with tackle of all sorts, having no less than three of those gins or pully wheels on board.

The plaintiff asserts the liability of the steamship company on two grounds;

First—That as the vessel furnished this gin, the company is responsible for any loss or damage resulting from its defects, and that in point of fact said gin was old, worn out and unfit for its uses.

Second—That Cooper being an employee of the company, it is responsible for his neglect, in not having the gin properly oiled from time to time, while using it.

The principal issue of fact is about the state or condition of this gin, and the oiling of it.

As might be expected, there is a good deal of contradictory swearing. Brookman, the head screwman, especially, swears stoutly that the hole through the wheel (or sheave as it is called), was worn to nearly twice its ordinary or original diameter, and that the pin on which it revolved was also much worn, and that they were not kept properly oiled. Other witnesses, co-laborers of Brookman, speak with more or less positiveness to the same purport. Per contra, the defendants prove by witnesses that this gin was oiled; that they oiled it. Maginnis, the foreman of Stevedore Cooper, swears that he himself "rigged" the gin—i. e., he put it up and prepared it for unloading the vessel on her arrival at the bar. He says this gin was new when he fixed it and suspended it for work. It was suspended about twenty feet above the decks. His statements are strengthened by the proof, not contradicted, that this was a new vessel, and her tackle generally new. At all events, Cooper and Maginnis, who were both men of long experience, thought the gin good and sufficient, and could have had it replaced at any moment, if they had thought differently.

There is no proof that there was any *apparent* defect in this gin, *at the time the company furnished it* to Cooper and Maginnis, *a few days only before*, for unloading the vessel. On the contrary, *at that time* it is shown directly and by the probabilities of the case, that it *was* apparently good, sound and new. It is very true that the gin *was in point of fact*, either defective or insufficient, for had it not been so, it would not have broken; but it was *apparently* good and sufficient, in the opinion of men of experience and competency to judge.

Under our law, article 2320 C. C., the responsibility of masters or employers only attaches when they "might have prevented the act which caused the damage, and have not done it."

- In a case like this, we think the utmost extent of the liability of the company would be, that they should employ a stevedore of experience and good repute, and that the tackle furnished on his requisition should be apparently good, satisfactory to the stevedore, and such as is usually furnished for like purposes. For non apparent defects, of which the company knew nothing, and which perhaps were inherent in the metal itself, out of which the wheel was cast, it would be unreasonable and unjust to hold it responsible, as well as unlawful. We all know that defects may and often do exist in metal, and especially in castings, which no human care and foresight can detect.

Catherine Riley vs. State Line Steamship Company.

It was sufficient, and the company discharged its full obligation when it furnished to *an experienced* stevedore, a tackle *apparently good and sufficient* and satisfactory. The company had nothing to do with the working or running of this machinery. It had no control of that. Cooper was an independent contractor, *employing his own labor*, and *pursuing his own methods* of doing his job. The company was under no obligation to look after the tackle further than to see that it was apparently good when delivered. If by wear and tear it became insufficient, on information and demand to that effect, it was its duty to furnish other tackle. We see no lack of care in the conduct of the company in this case. Men are but mortals, and are not expected to have the prescience of gods. Whether the wheel and axle became weakened by wear and tear, and for want of oiling, are disputed questions; but in our opinion are matters of no moment in the decision of this cause; for we hold that unless notified thereof, or at least knowing the facts, the company is not liable for such defects as were produced by the working of the tackle. As a matter of fact, however, we are not disposed to believe that the breaking of this wheel was from the wear of the sheave, which it seems, even by Brookman's testimony, was increased in diameter only from one-half to one inch.

In conclusion, we see nothing in the law or facts of this case justifying a judgment against the defendants.

It is therefore ordered, adjudged, and decreed by the court, that the verdict of the jury and judgment appealed from be annulled and avoided, and that plaintiff's demand be rejected with costs of both courts.

Marr, J., recused.