*125 Statement of the Case.
MONROE, J.
This is an 'action in damages for personal injuries alleged to have been sustained by plaintiff whilst in the employ of one John Pender, but whilst engaged in work “for the benefit, and at the request, and with the knowledge and consent” of defendant, and through defendant’s negligence. The defense is a general denial, coupled with a plea of contributory negligence.
The facts are: That defendant entered into a contract with John Pender, a boss painter, for the painting of its office building, the top of the cornice of which has some ornamental iron work on it. The general supervision of the work was intrusted to an architect, but the manner of its doing was left to the contractor, who employed and directed his own workmen (among whom was the plaintiff) and furnished them certain printed rules for their governance. From his testimony it appears that the manner of getting at the work to be done and the particular appliances to be used, in any given case, were largely left to the workmen themselves, but among the rules prescribed we find the following:
“(12) You are required, on each and every occasion when called upon to use ladders, ropes, supports, staging, and all such articles, to examine them carefully and reject any of the same that are imperfect or dangerous. (13) You will be allowed, and must take, sufficient time and care to inspect rigging and secure scaffolding, etc., in a substantial manner.”
John Pender turned the superintendence of the work in question over to his brother, E. F. Pender, and neither of them gave plaintiff any particular instructions as to how he should do the part expected of him, save that on the day of the accident he had been shifted from the stage work lower down to the top of the building, where he was standing on a ledge, otherwise called “the blocking course,” painting the front of the cornice, supporting himself in the meanwhile by holding on with one hand to a piece (that the witnesses call a “leaf” or “feather”) of the ornamental iron work on the top of the cornice, when his support gave way (the piece to which he was holding breaking off), and he was precipitated to the ground, and so badly injured as to render him a cripple for life. Being asked, “When you went to work on the Board of Trade Building, who gave you instructions how you should paint this particular place where the accident occurred?” plaintiff replied: “Mr. Eddy Pender sent me up there.” Being asked, “Who sent you on that ledge,” he answered, “That is the way it is always done.” And, after some repetition, the examination proceeds:
“Q. Who told you to do it that way? A. Eddy Pender. Q. He told you to walk on that ledge? A. No; he didn’t say walk on the ledge, but that is the only way you can paint it. • * * Q. Did Mr. Pender tell you the only waji to paint that was to have a rope stretched? A. No; he never told me nothing. He sent me up to do the work. * * * Q. And he did not discuss with you in any manner as to how you should do it? A. No, sir; and that is the only way I could' do the work. * * * Q. See if I am right: You were holding on to a leaf on the ornament? A. Yes, sir; on the cornice. Q. You were right below, painting? A. Yes, sir. Q. And that leaf— A. Gave way. Q. And you went backward? A. Yes, sir. * * * Q. What size do you say that leaf was? A. Pretty near as large as my hand.”
After the accident Merlin, another painter employed by Pender, was sent up to the place from which plaintiff fell to finish the work, and he states that he asked for and used a rope, which was stretched along the top of the cornice, and did not attempt to support himself by holding on to the ornaments, though prior to the accident he, like plaintiff, had supported himself in that way — not, however, by holding on to a single leaf. There was a verdict and judgment in the trial court in favor of plaintiff, and defendant has appealed.
Opinion.
We think it clear from the evidence that plaintiff, when injured, was in the employ of Pender, and not of defendant, and that de *127 fendant did not undertake to direct or control either of them with respect to the manner in which the work called for by the contract with Pender should be done. Not having employed plaintiff and exercising no control over him, either directly or indirectly, defendant assumed no obligation to him with regard to the condition of its building other than that which rested upon it in favor of any other individual who might lawfully have entered, or passed it, and as it would not be liable to another individual for injuries resulting from the failure of a mere ornament, not intended for such use, to support his weight, or part of his weight, neither can it be held liable to plaintiff for such failure. Robidaux v. Hebert, 118 La. 1089, 43 South. 887; Wendler v. Assurance Society, 19 App. Div. 50, 45 N. Y. Supp. 866; 20 A. & E. Enc. of Law (2d Ed.) p. 12; Busby v. Light Co., 136 Fed. 156, 69 C. C. A. 154.
It is therefore ordered, adjudged, and decreed that the verdict and judgment herein found and rendered be set aside and annulled, and that there now be judgment in favor of defendant, rejecting plaintiff’s demand and dismissing this suit, at his cost in both courts.
LAND, X, takes no part, not having heard the argument.