**JOHNSON v. MURRAY CO., Inc.**

No. 8200.

Court of Civil Appeals of Texas. Austin.

Jan. 22, 1936.

Rehearing Denied Feb. 12, 1936.

W. K. McClain and W. H. Nunn, both of Georgetown, for appellant.

Harris A. Melasky, of Taylor, and Martin B. Winfrey and Irving L. Goldberg, both of Dallas, for appellee.

BLAIR, Justice.

Appellant George W. Johnson sued appellee, the Murray Company, Inc., for damages resulting from the loss of his hand and arm in a gin stand owned by appellee company. He alleged that appellee company and C. S. Griffith entered into a joint adventure with Henry Little to operate a cotton gin for the 1932 season; that appellee company was to furnish the gin stands, belting, and other equipment; that Griffith was to furnish the building,. engine, and boiler; that Little was to furnish his labor and act as manager; and that each party was to share in the profits of the enterprise. That Little as manager of the enterprise employed appellant to operate the gin stands, and that while so doing his hand. and arm were caught in the machinery and torn off. That such injury was occasioned by reason of appellee company negligently furnishing the dangerous and defective machinery.

In the alternative, appellant alleged that if a joint adventure was not entered into, and the relation of master and servant was not created between appellee company and Little, then appellee company manufactured the gin stands, belts, and other equipment, and installed and furnished said machinery, knowing same to be dangerous and defective; and that appellant's injury was occasioned by reason of the negligence of appellee company in manufacturing and furnishing such dangerous and defective machinery.

Appellee company, among other defenses, plead that the contract between it, Griffith and Little was "a lease contract," and established only the relationship of landlord and tenant as between it and Little, and that it was therefore not liable for damages alleged to have resulted to the employee of the tenant; and that appellee company was not liable as a manufacturer or furnisher of

machinery to a party not in contractual relationship with it.

At the conclusion of appellant's testimony, the trial court instructed a verdict and accordingly rendered judgment for appellee company upon the ground that the contract between appellee company and Griffith on the one hand, and Little on the other hand, was merely a lease contract and created only the relation of landlord and tenant between appellee company and Little; and appellee company, as such landlord, was not liable to appellant, the employee of the tenant, for injury sustained by him while operating the gin stands for the tenant.

The lease contract described appellee company and Griffith as "lessors" and Little as "lessee," and leased and rented to him certain described land, "together with all machinery and improvements thereon," for "the ginning season of 1932," to "terminate not later than February 1, 1933." Other provisions of the lease contract read, as follows:

"3. The lessee agrees and obligates himself to pay to the Lessors the sum of $1.25 for every bale of cotton ginned by Lessee during the existence of this lease. Said payment of $1.25 for every bale of cotton ginned by Lessee shall be paid one-half to C. S. Griffith at Georgetown, Texas, and one-half to The Murray Company at its office in Dallas, Texas. The first payment of $1.25 per bale for every bale of cotton ginned by Lessee shall be paid to Lessors in the amounts above set out and at the place above set out on October 1, 1932; said payment to be made to Lessors on October 1, 1932, and shall be in an amount equal to $1.25 a bale for every bale of cotton ginned by Lessee up to and including October 1, 1932. Subsequent payments by Lessee to Lessors under this lease shall be made every fifteen days from and after October 1, 1932." ·

(By paragraph 4 lessee obtained an option to purchase the premises.)

"5. The Lessee agrees and obligates himself to mail to each of the Lessors on October 1, 1932, a statement showing the number of bales of cotton ginned up to and including October 1, 1932, and the Lessee agrees to mail to each of the Lessors on every 15th day following October 1, 1932, a statement showing the number of bales of cotton ginned since the preceding statement.

"6. Lessee agrees that he will not assign this lease or sublet the premises herein leased in whole or in part, and the Lessors or their Agents, may at all reasonable times enter upon the premises in order to examine the condition of said premises.

"7. The Lessee agrees to carry adequate Workmen's Compensation Insurance for the benefit of the employees of the gin plant herein leased, and agrees to carry adequate Public Liability Insurance, and to keep the Lessors harmless from any damages arising out of the operation of said gin; and the Lessee agrees not to allow any liens or charges to be created against the property herein leased.

"8. Lessee agrees and obligates himself to secure at his own expense the necessary license and bond that he is required to have under the laws of the State of Texas, and to do all things which the Laws of this State or any political subdivision thereof may require of him as a cotton ginner.

"9. Lessee agrees to keep a comprehensive set of books, reflecting the ginning operations of the Lessee at the gin plant herein leased, which books shall reflect at all times the number of bales of cotton ginned by the Lessee; and the Lessors or any of their agents or employees shall have the right at all reasonable times to inspect the books of the Lessee.

"10. At the expiration of this lease, lessee shall yield up and give to the lessors immediate possession of the premises herein leased with all the fixtures and chattels which are now on said premises, or which at any time during the existence of this lease shall be located on said premises in as good condition as it now is, reasonable wear and tear alone excepted; and at the end of this lease the gin saws shall be sharpened at the expense of the Lessee.

"11. It is understood and agreed that the Lessee is not the agent or representative of either of the Lessors; that the only relationship existing between either of the Lessors herein and Lessee is that of Lessor and Lessee.

"12. It is agreed and understood that if the Lessee fails to keep any of the covenants and agreements of this lease that the Lessor shall have the right to immediate possession of the premises herein leased.

"13. In the event that the premises herein leased are destroyed by fire or storm during the term of this lease, then in that event this lease shall immediately terminate and be of no force and effect."

Appellant contends that the evidence raised a jury issue as to whether the contract was a lease, or merely a subterfuge to conceal the real relation between the parties that Little was the manager of the joint adventure, or was the employee or servant of appellee company and Griffith in the operation of the gin. There was no evidence of any such subterfuge; nor that Little acted under the direction or control of appellee company or Griffith in the operation of the gin. The contract expressly stated that it was a lease, and used the terms "lessors" and "lessee" to define the relation of the parties. The language used in the contract is plain and unambiguous. The rental provided was for a definite sum, payable in a definite manner and at a definite time; the amount being measured by the number of bales of cotton ginned during the lease term. The rental was payable without regard to any profits Little might make and was due, even though he operated the gin at a loss to himself. The provision for inspection of the premises was under the circumstances an ordinary or proper provision, and was manifestly inserted for the protection of the rented properties. The provisions for keeping accurate books subject to lessors' inspection, and for periodical reports and payments of the rental were manifestly inserted to secure the payment of the rental due and when due. The provision requiring Little to carry compensation insurance for the protection of his employees was reasonable and peculiarly applicable to the character of lease in suit, and was in aid of the collection of the rental due under the lease contract. If no such insurance had been carried by Little and one of his employees had been injured, then the continued operation of the gin would have been jeopardized, because the income from the gin might be used in the payment of damages to the employee. The provision giving Little an option to purchase the property and to apply the amount paid as rental on the purchase price is common in lease contracts. The provision for termination of the lease in the event fire destroyed the rented premises is common to most lease contracts, and was inserted to protect Little against having to pay rent for the entire term in the event the properties rented were destroyed by fire before the expiration date of the lease. Neither provision is repugnant to ordinary lease contracts, and each provision is peculiarly applicable to the lease in suit, where properties were leased for the purpose of permitting lessee to occupy and use them to carry on a general cotton ginning business, and in which business each matter contracted for or against might have happened in the regular course of such business. The language of the contract is plain and unambiguous, and is a lease creating the relation of landlord and tenant between the parties. The relation of landlord and tenant is established where the owner of the land or tenement, for compensation, "consents to the occupancy thereof by another and the latter holds in recognition of or in subordination to the title of the former." 27 Tex.Jur. 45, § 2; Forrest v. Durnell, 86 Tex. 647, 26 S.W. 481.

The authorities uniformly hold that where the rental or consideration for a lease is based even upon compensation out of the net profits, or on percentage of sales of a leased business, no joint enterprise or partnership is created, but that only the relation of landlord and tenant is created. Fink v. Brown (Tex.Civ.App.) 183 S.W. 46; Higrade Lignite Co. v. Courson (Tex: Civ.App.) 219 S.W. 230; Ogus, Rabinovich & Ogus Co. v. Foley Bros. Dry Goods Co. (Tex.Com.App.) 252 S.W. 1048. The rental in the instant case was based solely on the number of bales of cotton ginned during the lease term, and it was payable whether Little made profits or sustained losses in the gin business. The undisputed evidence and the contract showed it to be a lease creating only the relation of landlord and tenant between the parties thereto, and the trial court correctly instructed a verdict as against the theory of recovery of appellant that the contract was not a lease, but was a subterfuge under which the parties thereto were conducting a joint adventure.

Appellant also contends that the lease contract created the relation of master and servant between appellee company and Little; and that since Little as such servant employed him (appellant) to operate the gin stands for the 1932 season, he also became the servant of appellee company. This theory of recovery is predicated upon the claim that since appellee company by the lease contract employed Little to operate the cotton gin for the 1932 season, it employed him to do a specific work in which the manner of operation and control were not left entirely to him, thus creating the relation of master and servant between them. The undisputed evidence showed that neither appellee company nor Griffith in any manner exercised any control over Little in the operation of the gin business. The lease contract as herein-

above construed did not authorize lessors to exercise any control over Little in his operation of the gin. Nor does the leasing of land and gin machinery for the purpose of permitting the lessee to carry on a general cotton ginning business, constitute the employment of the lessee to do a specific work for lessors; but even so, the undisputed evidence showed Little to be an independent contractor; he deriving such status as a lessee. Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A.(N.S.) 632. Neither lessor in the instant case ever attempted to control the manner of operating the gin by Little; nor did either of them employ, pay, or control in any manner any laborer employed by Little. The status of Little was therefore that of an independent contractor. Appellant was his employee. Appellee had no contract with appellant, nor any control over him. Since it appears that Little's status was that of an independent contractor, and that appellant was his employee, and that appellee company had no contract of employment with appellant nor any control over him, appellant therefore failed to show any cause of action against appellee company on his alleged master and servant theory of recovery. Hailey v. Missouri K. & T. Ry. Co. (Tex. Civ.App.) 70 S.W.(2d) 249; Jones-O'Shaughnessy Lumber Co. v. Bond (Tex. Civ.App.) 79 S.W.(2d) 649; Brigman v. Holt & Bowers (Tex.Civ.App.) 32 S.W. (2d) 220.

In the alternative, appellant contends that even though the contract was a lease and created only the relation of landlord and tenant between the parties thereto, still a jury issue was raised by the evidence as to whether appellee company, as such landlord, was liable for appellant's injury under the rule that a person who is on the rented premises at the invitation of the tenant has the same right of recovery as has the tenant himself, whether his relation to the tenant is that of servant, employee, or guest. 27 Tex.Jur. 346, § 205. In this connection appellant alleged that appellee company furnished the gin stands and distributor belt under the lease contract, knowing the belt to be worn and defective, and knowing such machinery to be dangerous and defective in the particulars alleged.

The evidence is not entirely clear whether appellant sought to hold appellee company liable on the ground that as landlord or lessor it furnished a worn and defective distributor belt, which caused the cotton to become clogged and to be unevenly distributed to the cotton roll in the gin breast, causing it to break or become choked, and necessitating the use of the hand or a stick to properly distribute the cotton, and while so doing appellant's hand and arm were caught and injured so badly by the machinery he was operating that amputation of the arm was necessary; or whether because appellee company as landlord or lessor furnished the tenant with machinery having a latent and dangerous defect, in that the angle bar and drum, between which appellant's hand and arm were caught, were constructed so close to each other as to render the machinery latently dangerous and defective. In either event, however, appellee company was not liable to appellant for his injury under the undisputed facts when applied to the rules of law applicable.

■■ It is settled law that where a dangerous or defective condition of the leased tenement or machinery is as well known to the lessee as to the lessor, the latter may not be held liable at the suit of the lessee's servant or employee; the cause of action, if any exists, is against the lessee. Marshall v. Heard, 59 Tex. 266; 27 Tex.Jur. 347, § 205. Appellant testified that before his injury he and lessee Little repaired the defective distributor belt, and of course each of them knew of its defective condition. The witnesses of appellant testified that the defective condition of the distributor belt was open and apparent even before Little leased the machinery; that its spikes or fingers were broken off, and that it was knotted and raveled; that it had been through at least two fires while owned by another party; that it had been in use since 1930; and that this defective condition of the distributor belt caused the cotton to become clogged at times, necessitating its distribution by the use of the hand or a stick. Appellant testified that his hand and arm were not injured by the defective distributor belt itself, but that such defective belt had caused the cotton to become clogged, and while he was attempting to relieve this condition with his hand, it was pulled or knocked between the angle bar and drum, another part of the gin stand, which injured his hand and arm. The angle bar and drum were completely covered by a strong shield, which required several minutes for two men to remove in order to release appellant's hand and arm. Thus the undisputed evidence showed that if the defective distributor belt had not caused the cotton to have become clogged near the angle bar and drum, then there would have been no occasion for appellant's

hand and arm being caught between the angle bar and drum and injured. In this situation, it clearly appears that appellant's hand and arm were injured as the result of the defective distributor belt. Its defects were known both to appellant and the tenant or lessee Little, and were open and apparent. There was no warranty or representation in the lease contract that the tenement or machinery furnished were safe; nor did the landlord or lessor covenant or agree to repair the machinery. In this situation the rule applicable is stated in 36 Corpus Juris, 205, § 875, as follows: "In the absence of a covenant on the part of the landlord to repair, no active duty is imposed on him to disclose apparent defects which are equally within the knowledge of the tenant, or which the latter might ascertain by due diligence, and no obligation will be implied on the part of the landlord to remedy defects in the demised premises existing at the time of the demise in the absence of a statutory requirement. The rule of caveat emptor applies in such cases, and the landlord is not liable for subsequent injuries resulting from such defects."

The text is supported by many cases, including the following: Perez v. Rabaud, 76 Tex. 191, 13 S.W. 177, 7 L.R.A. 620, Jones-O'Shaughnessy Lumber Co. v. Bond (Tex.Civ.App.) 79 S.W.(2d) 649, and Jackson v. Amador (Tex.Civ.App.) 75 S.W. (2d) 892.

 The proof being that both the tenant or lessee and his servant, appellant, had actual knowledge of the dangerous and defective distributor belt, we must conclude that appellant is not entitled to recover against the landlord or lessor, for evidently the tenant was in a better position to avoid the injury to his own employee than was the landlord or lessor. To hold the landlord or lessor liable in this situation would be, as stated in Pollack v. Perry (Tex.Com.App.) 235 S.W. 541, to require a landlord or lessor to take better care of the tenant and lessee, or his servant or employee, than the tenant would take care of himself or his servant or employee. And under the undisputed facts, it is apparent that appellee company is not liable as a lessor of a chattel or machinery not safe for use, and who fails to disclose the actual condition to those who may be expected to use the chattel or machinery. Nesmith v. Magnolia Pet. Co. (Tex.Civ.App.) 82 S.W.(2d) 721; Restatement of the Law of Torts, vol. 2, p. 1095, § 408. There was no representation in the lease contract that the distrib-utor belt was safe for immediate use. The lessor did not covenant or agree to repair the belt. Its defective and worn condition was known to both appellant and the lessee who employed him, and was open and apparent to any one.

 Nor did the evidence raise a jury issue as to whether appellee company was liable for appellant's injury as a manufacturer of a chattel or machinery made under a dangerous plan or design. A manufacturer's liability for making a chattel or machinery under a dangerous plan or design is well stated in Restatement of the Law of Torts and Negligence, p. 1073, § 395, as follows: "A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured."

The undisputed evidence showed that if the worn and defective condition of the distributor belt had not caused the cotton to become clogged, necessitating its distribution with the hand or a stick, appellant's hand and arm would not have been caught between the angle bar and drum and injured. Appellant therefore failed to prove that the alleged dangerous plan or design used in making the machinery was the proximate cause of his injury. On the contrary, he proved that the defective distributor belt, of which he and the tenant had actual knowledge, and which condition was open and apparent to any one, was the proximate cause of his injury. It was incumbent upon appellant to show that the dangerous plan or design used in making the gin stand was the proximate cause of his injury. This he failed to do. Gulf, C. & S. F. Ry. Co. v. Davis (Tex.Civ.App.) 161 S.W. 932, 933.

 Appellant also failed to prove that appellee used a dangerous plan or design in making the gin stand. He merely testified that the angle bar was constructed closer to the drum than on any other make of gin stand he had operated; and that he did not discover this condition until after his injury. This angle bar and drum were covered by a shield, as was true of all other makes of gin stands. Appellant

testified and other witnesses would have testified if permitted to do so, that if a man's hand got behind the shield, it would have been more likely to have been injured in this gin stand than it would have been in a gin stand in which the angle bar and drum were not so close together. However, negligence for use of a dangerous plan or design in making a chattel or machinery cannot be predicated alone upon the fact that other manufacturers of the same kind of machinery constructed or made it differently.

The undisputed evidence also convicted appellant of contributory negligence in using his hand to distribute the clogged cotton, instead of a stick. The angle bar and drum between which appellant's hand and arm were caught and injured were dangerous parts of the machinery. Appellant and all of his witnesses, testified that every one who could operate a gin stand knew of this danger. Appellant has operated gin stands for more than 30 years. The manufacturers of all makes of gin stands covered the angle bar and drum with a shield to protect those who used them, or were near them while in use, from danger of injury by the angle bar and drum. Each experienced gin stand operator, used as a witness by appellant, testified that he would not use his hand to spread or distribute cotton clogged above the apron, and that they always used a stick; and that under no circumstances would they stick their hand under the shield where the angle bar and drum were located. All of appellant's witnesses, except himself, testified that in distributing clogged cotton as appellant was doing at the time of his injury, a practical gin man would not have used his hand, but would have used a stick. Appellant admitted that he used his hand, and two of his witnesses testified that they were standing nearby and saw him using his hand to distribute the cotton at or near the angle bar and drum at the time it was caught and injured. Appellant further testified, as follows: "In knocking the cotton across in the manner that I have described my hand was caught in the drum that revolved underneath or right against the angle iron; I guess my hand got up a quarter of an inch too high, and it took it right through under the angle iron."

Appellant knew of the danger of getting his hand near the angle bar and drum. He knew of the defective belt which caused the cotton to be clogged near the angle bar and

drum on each bale of cotton ginned, as the last of the cotton was being distributed to the gin roll. His own witnesses, for whose truthfulness he vouched, testified that it was dangerous to use the hand to distribute cotton as he was doing when injured. This evidence showed appellant to be guilty of contributory negligence as a matter of law in using his hand to distribute the clogged cotton. Cisco Oil Mill v. Van Geem (Tex. Civ.App.) 166 S.W. 439; Green v. Cross, 79 Tex. 130, 15 S.W. 220; Nesmith v. Magnolia Pet. Co., supra; San Antonio Brewing Ass'n v. Wolfshohl (Tex.Civ.App.) 155 S.W. 644; Wichita Valley Ry. Co. v. Fite (Tex.Civ.App.) 78 S.W.(2d) 714.

Under our above conclusions, it is unnecessary to determine the admissibility of the opinion of certain witnesses as to whether appellee company used a dangerous plan or design in constructing the angle bar and drum close together. The judgment of the trial court will be affirmed.

Affirmed.