**DAROCA v. METROPOLITAN LIFE INS. CO. et al.**

**No. 9557.**

Circuit Court of Appeals, Fifth Circuit.

July 30, 1941.

Rehearing Denied Sept. 12, 1941.

918

James G. Schillin, of New Orleans, La., for appellant.

Harry B. Kelleher and John May, both of New Orleans, La., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

This is a suit brought by appellant, Louis Daroca, hereafter called plaintiff, against the Metropolitan Life Insurance Company, the owner of a four-storied apartment house in the city of New Orleans known as the Casa Grande Apartments, hereafter referred to as owner, and Travelers Insurance Co., public liability insurer of the owner, to recover damages for personal injuries incurred while engaged in repairing said building. At the close of the evidence a motion of defendants for a directed verdict was granted and the suit dismissed. The points relied on for reversal all run to this alleged error.

Recovery was sought under the provisions of Articles 670 and 2322, La.Civil Code, which are as follows:

Art. 670. "Every one is bound to keep his buildings in repair, so that neither their fall, nor that of any part of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect."

Art. 2322. "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

Plaintiff also relies upon Article 2315, La. Civil Code, the general negligence statute, unnecessary to quote.

Except on one point, to be later referred to, there is no dispute as to the facts, which are as follows:

Metropolitan Life Insurance Co., owner, had contracted with J. A. Haase, Jr., Inc., for extensive alterations and repairs to the building, to cost about $55,000. Plaintiff was a painter employed by Frank J. Matthew & Co., Inc., a subcontractor employed by Haase to do the painting. On June 26, 1936, while on a scaffold outside the second floor, he was injured by part of a casement window sash falling from the fourth floor and either striking him on the head or in some manner knocking him to the ground, with the result that his skull was fractured and he was otherwise injured. Apparently, no one saw the accident at the moment it happened. The sash was about 48 x 16

inches in dimensions and weighed about nine pounds. After the accident, it appeared the vertical stile which was hinged to the frame was split near the bottom but remained attached to the frame. The tenons of the horizontal stiles had pulled out of the mortices in the vertical stile, which allowed part of the sash to fall. The building was not rented to any tenants and it was completely in charge of the contractors. The carpenter work had been finished on the third and fourth floors about two weeks before the accident and only the painters were working on those floors. The sash that fell was equipped with a fixture to be used for the purpose of keeping it open at various angles. This fixture had been removed by the general contractor and sent to be polished and refinished. It was not intended to replace it until the painting of the sash and frame had been completed. That had not occurred when the accident happened and that particular fixture had not then been replaced. The sash was also fitted with a latch which would hold it securely in place when the window was closed. There was no evidence to show that the latch had ever been removed.

The complaint alleged the proximate cause of the accident to be the negligence of employees of the Haase Co. in carelessly loosening or detaching the window sash from its holdings and, in the alternative, the failure of the owner to keep the building in proper repair.

Plaintiff contends a presumption of negligence is implicit in Articles 670 and 2322 of the La. Civil Code; that the owner of a building has a nondelegable duty to keep it in repair; and that he would be responsible for negligence of an independent contractor.

There are many decisions construing Articles 670 and 2322 and much apparent conflict in the cases but most of the conflict disappears when the facts in each case are considered. We need not attempt to review and harmonize these decisions. Many decisions support the conclusions that a landlord owes a higher duty to his tenant than to a third person and the tenant need only show injury resulting from defective premises to recover. However, this results from the provisions of Articles 2693 and 2695 La.Civil Code, which incorporate a guarantee against defects in all contracts of lease, but do not apply to the facts in this case. On the other hand, the weight

of authority is to the effect that a third person can recover only by showing the house owner has been guilty of negligence, by not keeping his building in repair or that the accident was caused by a structural defect. The law is comprehensively reviewed in Heath v. Suburban Bldg. & Loan Ass'n, La.App., 163 So. 546. The contention that the codal articles necessarily imply a presumption of negligence in favor of a third person not a tenant, from the mere happening of an accident is without merit.

Plaintiff was neither a tenant nor a third person lawfully, but accidentally, on the premises nor a passerby. He was a workman engaged in making repairs to the building, employed for the very purpose of complying with the owner's duty to keep his building in repair. As to him there is no doubt whatever the owner was not responsible for any negligence of an independent contractor. Camp v. Church Wardens, 7 La.Ann. 321; Peyton v. Richards, 11 La.Ann. 62; Burton v. Davis, 15 La. Ann. 448; Gallagher v. Southwestern Exposition Ass'n, 28 La.Ann. 943; Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R. A.,N.S., 632. It is evident appellant can not recover on his first alleged cause of action.

As to the alternative cause of action alleged, assuming that if the accident resulted from the negligence of the owner in failing to keep the building in proper repair; or from a structural defect; plaintiffs could recover, we may consider the evidence on those points. In narrative form, it is as follows:

Kihemann, foreman of the painters, a witness for plaintiff, testified that he examined the sash after the accident; that the piece that remained attached to the frame was badly in need of paint and was weatherbeaten; that he was no wood expert but it did not look good to him. For defendant, Haase, Jr., president of the Haase Co., testified that he had been engaged in general contracting work for about 27 years; that he had personally inspected the sash before the accident, found that the woodwork was sound and all that was needed was to put longer screws in the hinges. C. R. Haase, a carpenter of more than 20 years' experience, brother of Haase, Jr., testified that he had repaired the window by putting longer screws in the hinges; that the woodwork was sound and nothing else was needed to properly repair the window. Gillis, fore-

920

man of the carpenters, testified that he inspected the window, checked up Haase's work and found all that was needed was to put in longer screws to hold the hinges tight; that no portion of the window was decayed and that it was sound and strong; that he picked up the pieces on the ground after the sash fell and that they were good. Parham, an architect of twenty years' experience, who drew the plans and specifications and superintended the work, testified that he had examined the sash and it was of standard design, was made of good quality cypress and perfectly sound. He could not say what caused the sash to fall but it could have been caused by the wind or some other force slamming it against the outer wall; that the sash showed it had been subjected to considerable force. The sash brought up as an exhibit shows a scar on the outer vertical stile that could have been caused by striking something. It appears to be strong and sound. The tenons run through the vertical stiles. The ends show them to be of the proper size with no evidence of decay. It is in evidence that after the accident the same pieces of the sash were put together and repaired by putting in screws to draw the crack together and hold the tenons in place. It was then put back on the window and remained there some three and a half years until it was taken down and offered in evidence in the District Court. This was all the evidence pertaining to the owner's negligence or a structural defect in the building.

Appellant contends that the doctrine of res ipsa loquitur applies; and that the case should have been submitted to the jury on the presumption of negligence arising from the happening of the accident and it was for the jury to determine the veracity of the witnesses. There is no doubt the sash had been properly repaired, in the opinion of competent carpenters, before the accident. Its condition after the accident was not evidence tending to show its condition before that. It is clear the evidence of Kihemann, if it has any probative force at all, was hardly a scintilla tending to show that the sash was structurally defective.

It was completely rebutted by the evidence of the witnesses introduced by defendant.

Res ipsa loquitur is a rule of evidence, difficult to define since it must be considered in connection with all the facts and circumstances of the case. It may create a presumption of negligence on the part of a defendant but it is always rebuttable. Jones v. Shell Pet. Corp., 185 La. 1067, 171 So. 447; Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas.1914D, 905. We do not consider it has any application to the facts disclosed in this case. The owner was not in control of the building and not present, except through independent contractors for whose negligence he was not responsible. He had no better means of knowing what caused the accident than did plaintiff. He was not required to do the impossible and prove what caused the accident. It was sufficient to show he was not guilty of negligence and the structure had no inherent defects. The window was safe enough if it was closed and latched. It was possible it may have been left open by one of the painters working on the fourth floor and had been blown against the outside wall by a sudden gust of wind; or too much force may have been exerted by someone in opening it. At any rate there was nothing to show negligence or breach of duty on the part of the owner. Cruse v. Sabine Transp. Co., 5 Cir., 88 F. 2d 298; Cf. Cusimano v. New Orleans Public Service Co., 170 La. 95, 127 So. 376. The witnesses for defendant were not impeached. The jury could not have arbitrarily disregarded their testimony.

The scintilla rule does not obtain in Federal courts. Whenever the evidence so clearly predominates in favor of one party that the judge, in the exercise of sound discretion, would be obliged to grant a new trial, if the jury rendered a verdict in favor of the other party, it is his duty to direct a verdict. Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819.

The record presents no reversible error. The judgment is affirmed.