ELLIS, Judge.
This is a suit for damages arising out of a fall suffered by plaintiff while acting in the course of his employment as a building inspector in East Baton Rouge Parish. This suit was brought against Fred G. Hamilton, Merrydale Heights Inc., Edgar R. Smythe, and Clarence Willie. The record reveals that Merrydale Heights was the record owner of the building in which the accident happened. Fred G. Hamilton was the President and principal stockholder of the corporation. Edgar R. Smythe and Clarence Willie were contractors who worked on the building. Merrydale Heights Inc. filed a third party petition against Smythe and Willie, and Smythe third partied Willie. Clarence Willie made no appearance in the case, and judgment was rendered against him by default. Judgment was rendered against Merrydale Heights Inc., Edgar R. Smythe, and Clarence Willie, in solido, and Mr. Hamilton was dismissed from the suit.
Merrydale Heights Inc. was granted judgment against Smythe and Willie, and Smythe was granted judgment against Willie in the amount of the judgment rendered in favor of plaintiff. From the judgment in favor of Daves, Merrydale Heights Inc. appealed suspensively and devolutively, and Smythe appealed devolutively. Daves answered the appeals asking an increase in the quantum of the awards made to him.
The record reveals that on May 17, 1963, when acting in his capacity as a building , inspector, Mr. Daves was conducting an inspection of a newly constructed house at 736 Wylie Drive in Baton Rouge, Louisiana. 'In the course of this inspection, it became necessary for him to enter the attic, access to which was provided by a disappearing attic stairway located in the hall. When he had ascended part way up the stairway, it suddenly gave way and fell to ■the floor, as a result of which fall Mr. Daves suffered the injuries complained of herein.
It seems clear from the record, and is not seriously disputed by any of the parties hereto, that the proximate cause of the accident was the failure of the person who installed the disappearing stairs to properly secure the jamb of the stairs to the frame provided for same in the hall ceiling. The record reveals that the stairs were attached to the frame only by means of finishing nails through the trim. Although there is some evidence which attributes the collapse of the ladder to the failure of the carpenter to scribe the lower ends of the rails thereof so as to make them fit flush on the floor, the preponderance of the evidence is definitely to the effect that the stairway was not properly attached at the top. The installation of the stairway was performed either by Clarence Willie or by someone working directly under his supervision.
Both Merrydale Heights Inc. and E. R. Smythe, the appellants, seek to escape liability on the same basis. First, they claim *363 to be insulated from liability because of the fact that the negligence is that of an independent contractor. Merrydale alleges that that legal relationship existed between itself and Smythe, and Smythe claims that Willie was an independent subcontractor. Secondly, each alleges the contributory negligence of Mr. Daves in that it was his duty as an inspector to detect the deficiencies in the installation of the disappearing stairs before attempting to use them.
Both Merrydale and Smythe agree that their relationship is defined by a certain unsigned agreement dated February 28, 1963, which forms part of the record herein. It reads, in part, as follows:
“The building contractor, Ed Smythe, agrees to lay out, form up, erect, finish and deliver this home in a satisfactory and thoroughly workmanlike manner on Lot #80 Wiley Drive, subdivision in East Baton Rouge Parish, Louisiana, as per approved plans and specifications, as attached, these plans and specifications having been approved by F.H.A. This house to be built under F.H.A. supervision and inspection.
“1. The Building Contractor agrees to do all supervision and coordination as well as labor and carpentry work from the time the home is started until all inspections have been made and the house has been accepted as finished and ready for occupancy for the total sum of $1779.80
200.00
$1979.80
“2. The Building Contractor agrees that at times upon the request of the Corporation, he will order materials and services from firms agreed upon and designated by the Corporation. The Building Contractor will take care of all carpentry work, all interior work such as doors, trim, panelling, and etc. as well as all slab and concrete work (excepting concrete finishing) and will install all sheet-rock and in general all work to complete the above home as per plans and specifications except the following specific jobs and services which will be sublet or contracted for to others by the Corporation. However, the Building Contractor willi at all times personally supervise and coordinate all other sub-contractors and! work.
“The other sub-contractors: work and service to be accomplished by others than the Building Contractor and paid for direct by the Corporation and listed below:
“a. Electrical, wiring and fixtures
“b. Plumbing and heating, including septic tank, fixtures, and all installation
“c. Painting and textoning interior and exterior
“d. Grading and leveling lot ready for buyer
“e. Shrubbery and landscaping
“f. Ceramic tile work complete
“g. Masonry and brick labor
“h. Flooring on slab
“i. Flooring in kitchen and baths
“j. Termite proofing
“k. Attic insulation
“l. Concrete finishing
“m. Roofing labor
“n. All materials such as lumber, brick, windows, doors, concrete, dirt, sand, gravel, columns, lot, plans, permits, builders risk, interim finance, F.H.A. fee, realty fee, title exam, surveying, and etc.’’’
The law of this state appears clear that if the relationship between Merrydale and Smythe is that of owner and independent contractor, then Merrydale could not be held liable for the negligence of Smythe or any of his sub-contractors. In the case of *364 Crutti v. Frank, 146 So.2d 474 (La.App.1962), the following language is used:
“[9] In the case of De Cuers v. Crane Co., La.App., 40 So.2d 61, 68, decided by this court it was held:
“ ‘[5] It is well settled that where a contractor undertakes to do work for an owner under a contract which provides that the owner shall furnish the plans and specifications and that his only right shall be to insist that the job be done in accordance with those plans and specifications, the contractor does not become the agent or employee of the owner. Therefore, the owner is not liable to third persons who may be injured through fault of the contractor or his employees. Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A., N.S., 632; Crysel v. Gifford-Hill & Co., La.App., 158 So. 264; West Bros. v. Pierson, La.App., 2 So.2d 71.’
“Further, the owner is not responsible for any negligence of the independent contractor, Daroca v. Metropolitan Life Ins. Co., 5 Cir., 121 F.2d 917 (and cases cited therein.)”
However, the very words of the contract indicate that Merrydale retained a high element of control over the manner in which the building was to be constructed. The contract specified fourteen different elements of construction for which Merry-dale was basically responsible, and relative to which Smythe’s duty was only that of supervision and co-ordination. In addition, the record is replete with instances in which Mr. Hamilton, President of Merrydale, actually exercised supervision over the activities of those who were engaged in working on this job. The record makes it clear that rather than being a mere owner, Merry-dale Inc. was an owner-builder, and in effect, was its own general contractor. Where such an element of control over construction is present, the so-called contractor is in reality the agent or employee of the owner-builder, and his negligence is imputable to the owner.
The same applies to the relationship between Smythe and Willie, for not only was Smythe charged with supervision of and responsibility for labor under his contract, he actually exercised control over Willie’s men, supervised their activities and transferred them from job to job as he saw fit.
Appellants urge the contributory negligence of Daves. They base this contention on his failure to discover the defect in the installation of the disappearing stairway when it was allegedly his duty as a building inspector to discover such defects in the discharge of his duties.
Mr. Daves himself testified that he pulled the ladder down, and unfolded it and shook it to make sure that it was secure. Finding no indication that it was not, he proceeded to mount the ladder in order to inspect a bathroom vent in the attic. The ladder collapsed when he was nearly to the top. He further testified that it was his intention to inspect the fastening at the top of the ladder before descending from the attic.
A number of other witnesses, who were qualified as expert contractors or inspectors testified that they employed the same method of checking such a stairway for safety before mounting it.
It seems clear that Mr. Daves acted substantially in accordance with the practice employed by other men in his field, none of whom had ever heard of a similar accident. We do not find that he was con-tributorily negligent in not inspecting the fastening at the top before mounting the ladder.
Counsel for Smythe advances the theory that the ladder had not been scribed so as to fit flush on the floor, which caused an inordinate strain to develop on the lower hinge. This, in turn, he theorizes, caused the hinge to fail, causing the ladder to collapse and putting a sufficient strain on *365 the top to cause it to pull away from the frame and fall. One of the expert witnesses testified to this effect at the trial of the case. However, he did admit that had the ladder been properly fastened at the top, it would not have fallen but would only have twisted. The trial Judge was not impressed with his testimony and we feel that, in view of the overwhelming weight of the evidence to the effect that the sole cause of the collapse was improper fastening at the top, that this theory has been not satisfactorily proven.
Appellants have asked for a reduction in the sum awarded to Mr. Daves. The trial Court awarded him $3000.00 for pain and suffering, $785.00 for lost wages, medical expenses totalling $484.00, loss of sideline income of $1000.00, or a total of $5269.00. Daves answered the appeal, asking for an increase in the award.
The evidence shows that Mr. Daves was first injured in an automobile accident on July 28, 1962, in which he suffered a back and neck injury. He was treated by Dr. Alvin Stander, an expert orthopedic surgeon, until December 21, 1962. Dr. Stander testified that at that time, having been unable to demonstrate positive objective findings to explain Mr. Daves’ symptoms, he recommended a consultation. He did not see Mr. Daves again until the day before the trial of the case, at which time his examination was again essentially negative, except for Mr. Daves’ complaints of pain. He was unable to find any appreciable disability, either temporary or permanent.
Dr. I. L. George, also an expert orthopedic surgeon, testified that he treated Daves from January 31, 1963, until the trial, and that he still had him under treatment. He found that Daves complained of pain in the lumbar and cervical regions, and that the motion of his lumbar spine was restricted. Mr. Daves was placed in the hospital in traction for his back and neck on February 5, 1963, and discharged on February 11th. He was given an orthopedic collar to wear by Dr. George. He was hospitalized again for back traction from March 23, 1963, through March 28, 1963. On April 15th, he was seen again by Dr. George and was better, but complaining of headaches and pain in the legs.
On May 17, 1963, Mr. Daves suffered the fall complained of in this case. He saw Dr. Charles Austin Meng, the City-Parish physician for Baton Rouge, complaining of injury to neck, back, and right leg. Dr. Meng found tenderness over the neck and back, and a bruise on his right leg, midway between the knee and hip. X-rays were taken of the neck and back which were essentially negative for traumatic injury. Dr. Meng saw him on May 21st and May 24th. At no time did Mr. Daves complain of injury to his knee, and on the 24th, Dr. Meng found him to be asymptomatic and doing well, and felt he was able to return to work the following day.
On the next day, Mr. Daves saw Dr. George again, complaining of pain in the right ankle and knee, giving a history of having fallen while climbing a disappearing stairway. Dr. George found tenderness in the joint, but no instability, and a 15 degree limitation in extension. He complained of constant pain in the knee. On June 15th, when Mr. Daves continued to complain of pain in the knee, Dr. George put him in the hospital for knee traction. He remained there until June 19th, when his leg was placed in a cast. The cast was removed on July 6th. Mr. Daves has continued under Dr. George’s treatment since that time.
On July 29th, Dr. Meng saw him again to check his condition before allowing him to return to work. Beyond Mr. Daves’ complaint of pain in the knee, he could find no indication of disability, and allowed him to return to work
It was Dr. George’s opinion, as of the time of the trial, that Mr. Daves was suffering from a 20% partial temporary disability, and a 6.75% partial permanent disability.
*366 In. the light of all of the above findings, considering the inconsistencies apparent in the testimony of the doctors and the fact that Mr. Daves has been able to carry out the duties of his occupation except for 34 days which he was off work, and particularly in view of the fact that Mr. Daves was already suffering from disability as a result of the 1962 automobile accident, we are of the opinion that the award made for pain and suffering was excessive and should be reduced to the sum of $2000.00. In all other respects, the award is correct.
Accordingly, the judgment appealed for is amended by reducing the amount thereof to $4269.50, and in all other respects is affirmed.
Amended and affirmed.