*SMITH VS. THE FEMALE ORPHAN ASSYLUM.*

SMITH
VS.
FEMALE OR-
PHAN ASYLUM

If any damage be sustained by the lessee in consequence of repairs put upon the building by the lessor, the latter is responsible.

APPEAL from the Parish court, for the parish and City of New-Orleans.

This suit was brought to recover the value of a quantity ice, alleged to have been lost in consequence of the defendants having removed the roof of a building, which they had leased to the plaintiff for an ice house. The defendants admitted the lease and removal of the roof, but contended that the repairs were indispensable, and made at the instance and requst of the plaintiff. This ground of defence being unsupported by the testimony, there was judgment for the plaintiff, and the defendants appealed.

*McCaleb,* for appellant.

*Preston,* for appellees.

MATHEWS J. delivered the opinion of the court. In this suit the plaintiff claims damages for the loss of a quantity of ice, which loss he alleges was occasioned by improper

conduct or negligence on the part of the defendants. After the institution of the action the plaintiff died, and it was prosecuted by his widow and son who obtained a judgment in the court below, from which the defendants appealed.

The undisputed facts of the case, are the following : The appellants leased to Smith a part of a house owned by them in the Faubourg St. Mary, for the term of five years, to commence from the 1st of January, 1829, to be used as an ice house ; at the time of the lease the house required some repairs; on the 21st of April, of the same year, the owners contracted with certain undertakers to make them, and amongst other things, to put on a new roof. The repairs were not commenced (at least so far as they related to the roof) until the middle of June, at which time the old roof was taken off; and rains which immediately succeeded destroyed about 200 tons of ice, which had been put by the plaintiff into that part of the tenement by him rented. The value of the ice is proven to have been forty dollars per ton.

According to these facts, the defendants

are clearly responsible in damages for the loss occasioned to the plaintiffs; being a direct consequence of the misconduct of their agents (the undertakers) in removing the roof of the house, by which the property therein stored, was exposed to imminent risk and danger, .especially such an article as ice, which could not fail to be suddenly and totally destroyed by exposure to rain.

*Eastern District.*
*June, 1830.*

SMITH
*vs.*
FEMALE OR-
PHAN ASYLUM.

If any damage be sustained by the lessee in consequence of repairs put upon the building by the lessor, the latter is responsible.

A defence, however is set up, based on an alleged acquiesence and consent of the tenant that the roof might be removed at the time when the workmen were about to take it off. The answer contains also a plea in reconvention for the value of the rent.

This defence, if supported by the testimony, would relieve the appellants from any obligation to make good the loss sustained by the appellees. Two witnesses only, out of a great number examined in the court below, are relied on as establishing the fact of Smith's assent to the removal of the roof at the time it took place. These are, Ogier one of the undertakers to repair the building, and Mrs. Laidlow, the treasurer of the Assylum. The former proves the fact most expli-

SMITH
*vs.*
FEMALL OR-
PHAN ASYLUM.

citly; but, from the impossibility to reconcile his testimony with that of many other witnesses who were examined in the case, the judge of the Parish court before whom the suit was tried, seems by his judgment, not to have given much credit to this witness; and, in this respect, we cannot say that he erred. The weight of the evidence, both in relation to the number of witnesses and the facts by them declared, so contrary to the possibility of truth in those related by Ogier, leaves no doubt of the latter having fallen into mistakes, and destroys his credibility in the present instance.

From the explicit and candid manner in which Mrs. Laidlow's testimony appears to have been given, no doubt can be entertained of its truth; but it does not establish the consent of Smith to the removal of the roof of the house at the time when it was done. The latest conversation which she relates as having had with him, took place about the first of May; at that time he appeared to desire that the repairs of the house should be prosecuted, and stated that he would urge the undertakers to begin their work. The witness

saw him again in June—the repairs had then commenced—he made no complaint, &c. On her cross examination, she states that she did not know what repairs were commenced, and that Smith had been urgent only as to repairs of the front of the house. This testimony does not prove his assent, given in such a manner as to place on him the risk of loss. Taken altogether, it shows that he was desirous that the house should be put in good condition, and urged immediate repairs only to the front. The danger of loss by taking away the roof was so evident that it cannot be believed that any person of ordinary sense and discretion, having a large quantity of ice protected by it, would have consented to such a step; at least, strong, clear and indubitable proof ought to be required to establish a consent of this nature, and this is not found in the present case.

It is further objected to the plaintiff's right to recover, that the injury complained of, might not have happened if the tenant had not removed the floor of the *entré-sallé*, which the evidence shows he did. The rooms composed of the lower story and the

second, were rented to him expressly for an ice-house, and for the term of five years. To make the tenement more profitable for such use, the removal of this floor was necessary, and could be done without injury to the proprietors, as it might easily have been replaced at the end of the term for which the premises were let, at the tenants expense. By agreeing that these rooms should be used as an içe-house, the lessors may be considered as having impliedly assented to any arrangement of them which the lessee might deem most conducive to his profit without injury to the former. We, therefore, conclude that this defence is not available.

The case is however, severe against the defendants, as the injury of which the plaintiff complains, was not caused by the direct agency of the proprietors of the house, consequently the damages should be reduced to the lowest amount authorized by the testimony. The loss is proven to be 200 tons of ice, (the value, forty dollars per ton) amounting to 8000 dollars. From this sum must be deducted the probable waste of the article which would have occurred during the time

it was retailing out to purchasers—say the whole summer. This waste is estimated at 25 per cent. and amounts to 2000 dollars. From the judgment of the Parish court must also be deducted a little upwards of one years rent of the store, (500 dollars) leaving a balance of 5500 dollars, for which judgment should have been rendered in the court below.

It is therefore ordered, &c. that the judgment of the Parish court be avoided, reversed and annulled: And it is further ordered &c. that the plaintiffs and appellees do recover from the defendants and appellants five thousand five hundred dollars, and that the appellees pay the cost of this appeal; those of the court below to be borne by the appellants, &c.