**FIRE PROTECTION EQUIPMENT CO., Inc., v. RABINOWITZ.**

No. 16988.

Court of Appeal of Louisiana. Orleans.

March 25, 1940.

Rehearing Denied April 22, 1940.

Writ of Certiorari Denied May 27, 1940.

Weiss & Weiss, of New Orleans, for plaintiff-appellant-appellee.

H. L. Midlo, of New Orleans, for defendant-appellant.

McCALEB, Judge.

The plaintiff, Fire Protection Equipment Company, Inc., a corporation engaged in the business of installing sprinkler systems, brought this suit to recover the balance due, plus certain extras, under a written contract made by it with the defendant, Jacob Rabinowitz doing business under the name of J. Rabinowitz Company.

It alleges, in substance, that, on August 3, 1937, it submitted to the defendant a proposal for the installation of a wet pipe system of automatic sprinklers in the defendant's building located at No. 533-535 Iberville Street in the City of New Orleans; that, in accordance with the request of the defendant, it submitted a blue print or plan showing precisely the sprinklers to be installed under the proposal and secured the approval of such plan by the Louisiana Rating and Fire Prevention Bureau and that, thereafter, on August 30, 1937, it entered into a written contract with the defendant whereby it agreed to install the sprinkler system in consideration of a price of $1,440. It further alleges that it has complied with all of the provisions of the contract and has completed the work in accordance therewith; that, after the completion of said work, it obtained the written approval of the Louisiana Rating and Fire Prevention Bureau in conformity with the terms of the agreement and that the defendant paid on account of the contract price the sum of $1,380, leaving a balance due and owing of $60 which the defendant, without just cause, refuses to pay. It further avers that, in addition to the balance due on the contract price, the defendant is also responsible to it for the sum of $2.25 for labor and materials furnished upon the job which were not included in the contract price and that the defendant is furthermore liable for an extra charge of $63.40 because he refused to erect staging for outside sprinkler installation which staging became necessary as a consequence of the fact that certain windows of his building were boarded and could not be used during the time the work was being performed. It is also alleged that, under the terms and conditions of the contract, the defendant is liable for plaintiff's attorney fees on the entire contract price plus extras and claim is made for the sum of $150.56 for this item.

In due course, the defendant answered plaintiff's petition and admitted that he entered into the written contract for the erection of the sprinkler system. He denied, however, any liability to plaintiff on the ground that the latter did not perform the contract in accordance with its terms and conditions; that the agreement provides that plaintiff's work is to be approved by the Louisiana Rating and Fire Prevention Bureau; that plaintiff did not obtain the Bureau's full approval of the work after its completion because the letter of said Bureau stated that its representative found that the plaintiff failed to provide all of the necessary sprinklers which were required to reduce the exposure charge and that the windows at the rear wall of the

building are exposed by the building in the rear of the property. He further alleged that he paid to plaintiff on account of the contract the sum of $1,380 without prejudice to his rights and that he withheld the balance of $60 on the contract price because plaintiff stated to him that it would cost that amount to install the additional window sprinklers which were required by the Louisiana Rating and Fire Prevention Bureau. He further denied that he was indebted to plaintiff for the extras sought to be recovered.

The defendant also filed a reconventional demand in which he specifically set forth plaintiff's failure to comply with the contract; that the cost of providing the necessary sprinklers to complete the job amounted to the sum of $196; that, in addition thereto, plaintiff had damaged the plaster of the ceilings of his building in installing the sprinkler system; that it would cost the sum of $85 to repair this damage; that he was also entitled to a credit in the amount of $1.75 for a certain standpipe which had been purchased from him by the plaintiff and that he was further entitled to recover the sum of $3.90 per month from September 30, 1937, representing the increase in his insurance rate as the result of plaintiff's failure to install the additional sprinklers required by the Louisiana Rating and Fire Prevention Bureau as provided by the contract.

After a hearing in the lower court on the foregoing issues, the trial judge dismissed plaintiff's suit as well as the defendant's reconventional demand as of non-suit. Both litigants have appealed to this court from the adverse decision.

The main facts of the case are not seriously disputed and we find them to be as follows: The defendant, Rabinowitz, had, just prior to the time the contract was entered into, erected a six-story concrete building for the purpose of operating a merchandizing business. Being desirous of having this building adequately protected against fire and also in order to obtain a reduction in his insurance rates, he contacted a number of firms engaged in the business of installing sprinkler systems for the purpose of having such a system installed in his new building. The plaintiff concern was the successful bidder on the job and agreed to do the necessary work for the sum of $1,440. A written contract between the parties was accordingly entered into on a standard form prepared by the National Automatic Sprinkler Association (and furnished by the plaintiff) whereby the plaintiff agreed, for the above stated price, to install the "necessary Automatic Sprinklers and necessary Open Sprinklers" in the building. This contract further provided that the plaintiff would erect and install in the building a "wet pipe system of automatic sprinklers and/or fire extinguishing apparatus as described in the specifications consisting of 1 sheet which are hereto attached and made part hereof, and subject to inspection by Louisiana Rating & Fire Prevention Bureau acting as the Agent of both parties, whose inspection and approval of the work done hereunder by the Seller shall be conclusive evidence of the proper performance and completion of the Seller's obligations hereunder."

Prior to the signing of the contract by the parties, the plaintiff prepared a plan or blue print of the system it intended to install in the building. This plan shows the number of automatic sprinklers and open sprinklers which would be furnished by the plaintiff. Mr. Hiller, President of the plaintiff corporation, and Mr. Korn, its engineer, testified that this blue print was made at the request of the defendant because the latter was anxious to determine exactly what he was getting under the agreement. These statements are vigorously denied by Mr. Bronfin who appears to have represented the defendant throughout the negotiations. Mr. Bronfin declares that he did not know anything about the plan until sometime after the work had begun when Mr. Korn informed him that a blue print of the installation work had been made for the Louisiana Rating and Fire Prevention Bureau. Mr. Dixey, one of the engineers of the Bureau, testifying for the defendant, stated that, in an installation job of the magnitude of the one in contest, the Bureau requires that plans or blue prints be submitted to it for its approval.

After the work was completed, the plaintiff, in conformity with the provisions of the contract, sought to obtain the Louisiana Rating and Fire Prevention Bureau's approval of the job and, in response to its request, the Bureau, on October 7, 1937, wrote to the plaintiff a letter, the pertinent portion of which reads as follows:

"In compliance with your request of September 24, the fire protection equipment installed by your company at the above location, consisting of 296 closed

and 18 open sprinklers on one (1) 4-inch alarm valve, has been inspected and found to be in accordance with the plans approved on August 7, 1937, by Mr. S. G. Peters, and to comply with our rules of that date.

"Note: Our inspector found that 12 additional window sprinklers are required to reduce exposure charge at the windows in the rear wall of building that are exposed by building in rear of No. 210-12 Chartres Street."

The foregoing letter is the foundation of this controversy. It is the contention of the plaintiff that the communication is an approval of its work. On the other hand, the defendant maintains that the letter shows that the Fire Prevention Bureau did not regard plaintiff's performance of the job as being complete since it had failed to install a sufficient number of sprinklers to give the adequate fire protection and a reduction in insurance rates as contemplated by the agreement. Plaintiff counters, however, that the installation work was performed in strict accordance with the plan it furnished to the Fire Prevention Bureau prior to the time the contract was made and that the court should be guided by that plan in determining whether it has fully performed its undertaking.

■ When the plan or blue print was offered in evidence by the plaintiff, counsel for the defendant made timely objection to its introduction on the ground that it formed no part of the contract and that it had been prepared and submitted prior to the time the parties had put their agreement in writing. The judge of the trial court overruled the objection and admitted the plan. His action in so doing, we think, was erroneous. Nowhere in the contract is any reference made to a plan or blue print. On the contrary, the contract provides that the plaintiff agrees to install "a wet pipe system of automatic sprinklers * * * as described in the specifications consisting of 1 sheet which are hereto attached and made part hereof." The specifications attached to the contract are of no assistance whatever in determining either the type of system to be installed or the number of sprinklers to be provided. They merely set forth that the buyer is to pay the Sewerage and Water Board for connecting up the system; that the seller is to install curtain boards; that the seller is to furnish a performance bond; that the buyer is to provide a proper place for the work to be done and that the work shall be completed within approximately 60 days. The contract itself provides in paragraph 12 that: "Upon acceptance of this proposal by the Buyer, all previous communications between the parties hereto, either verbal or written with reference to the subject matter of this proposal, are hereby abrogated, and unless otherwise stated herein it constitutes the entire agreement between the parties hereto."

■ Forasmuch as the plan was presented prior to the consummation of the contract and because of the fact that it is not referred to in the agreement, it would seem to follow that, in view of the foregoing stipulation, it should not have been considered by the trial judge in determining whether the plaintiff had provided all of the sprinklers contemplated by the parties. No reference is made in the contract as to the number of sprinklers the plaintiff is required to furnish. However, it is provided in paragraph 14 thereof that the "necessary" automatic and open sprinklers are to be installed. In view of this, it is our duty to decide what was the intention of the parties as to what sprinklers were "necessary" to give the defendant adequate fire protection.

Mr. Frank E. Rainold, District Manager of the Rockwood Sprinkler Company, who had made a bid on the job, testified on behalf of the defendant. He was asked whether, under the form contract submitted by the plaintiff to the defendant, it was intended that all sprinklers would be provided which would meet the requirements of the Louisiana Rating and Fire Prevention Bureau. In response to this question, he said: "Yes Sir. The sprinkler system is fire protection and consequently when agreeing to furnish the necessary number of sprinklers, we agree to furnish that number that is necessary to protect against some exposure or hazard, which in this case it was an adjoining building. Consequently, we would put in the necessary sprinklers that would be necessary to protect against that hazard, in accordance with the requirements of the Louisiana Rating Bureau."

■ It strikes us that Mr. Rainold expresses a reasonable deduction as to what the contractor should have furnish-

ed and as to the performance expected by the owner. It must be remembered that the plaintiff concern is an expert in the installation of sprinkler systems. The defendant obviously was not informed either as to the fire hazards existing in the building or as to the number of sprinklers which were necessary. He was compelled to rely upon plaintiff's skill and judgment. In fact, his chief interest was to obtain the greatest possible protection against fire and to get the benefit of a low insurance rate. Under these circumstances, there was a plain duty upon the plaintiff to fully inform the defendant at the outset with respect to the advantages he would derive by installing the sprinkler system and it was furthermore incumbent upon it to advise him that, if he would protect all openings of his building with sprinklers, he would be benefited by obtaining a lower rate of insurance. It is apparent to us that the defendant believed that he was to receive all sprinklers necessary to give the greatest amount of protection as it is improbable that he would have agreed to expend approximately $1,500 and not get the full insurance rate reduction which would only entail an additional expense of less than $200.

Moreover, we do not regard the letter from the Fire Prevention Bureau as a complete approval of the sprinkler system installed by the plaintiff. It is true that it is stated therein that the plaintiff has properly performed the work in accordance with the plan which was previously submitted to the Bureau on August 7, 1937. However, the author of the letter specifically notes that the Bureau's inspector found that 12 additional window sprinklers would be required to reduce the exposure charge. This, to our minds, clearly indicates that the Bureau was of the opinion that plaintiff had not given to the defendant all of the sprinklers which were necessary to comprise a complete sprinkler system against fire hazard. If the plan upon which plaintiff relies (and which shows the number of sprinklers to be provided) had been made part of the contract, there could be little doubt as to its right of recovery. Why the plan is not referred to in the agreement is best known to the plaintiff. At all events, we feel that it was clearly the intention of the defendant to have the plaintiff furnish and install a sprinkler system which would afford maximum fire protection and plaintiff's failure to do so must be regarded as a breach of the contract since the agreement (which it prepared) fails to specify the number of sprinklers to be supplied and prescribes that all necessary sprinklers will be installed.

Defendant's witnesses testified that the cost of providing the 12 additional sprinklers in order to complete the job amounts to $196 and he asks, in reconvention, that judgment be granted to him for that sum. We are satisfied that this is a reasonable price and we will accordingly permit a recovery of that amount subject to a $60 credit in favor of plaintiff, to which it would have been entitled if it had fully performed the contract.

Plaintiff further seeks to recover a balance of $2.25 for extra labor and materials which were not covered by the contract price. This sum is calculated by plaintiff in the following manner: It charges the defendant $4 for cementing openings in the building and $12 for extra work on the stair or a total of $16. Against this, it gives the defendant credit for a standpipe it purchased from him for the sum of $13.75. A deduction of the latter amount from the former leaves a balance due the plaintiff of $2.25. The defendant, however, asserts that plaintiff's calculations are incorrect. He claims that the credit for the standpipe given by plaintiff should be greater and that there is actually a balance due him, after deducting the cost of the cement openings and the extras for the stairs, of $1.75. The proof as to all of these items is of a most vague nature and we do not consider it sufficient to permit a judgment in favor of either litigant for the small amount claimed by them.

Plaintiff further contends that he is entitled to a judgment for $63.40 because he was required to use a boatswain's swing in installing the open sprinklers due to the fact that the defendant had placed shelving in front of certain windows of the building so that it was unable to have access to the side walls for the purpose of making the installation. The defendant vigorously denies this charge and has offered evidence to the effect that, since the building was of concrete construction and since the windows, which are of steel, have pivotal openings, it would have been impossible for the plaintiff to have installed

738

the sprinklers by working from these windows and that the only practical mode of installation was by the use of a boatswain's swing. The evidence concerning this item is most conflicting and we are not satisfied that plaintiff has proved its demand by a preponderance of evidence. We therefore disallow its claim.

The defendant, in his reconventional demand, claims that the work done by the plaintiff has damaged the plastering of the ceilings of the building and that it will cost the sum of $85 to make the necessary repairs. Testimony has been introduced by him to substantiate this claim and no evidence has been offered by the plaintiff to rebut it.

It is the contention of the plaintiff that the claim is merely an afterthought and that the defendant waived his right to assert it when he stated in his answer that "if petitioner would have installed the twelve additional window sprinklers required * * * defendant would have paid the sum of $60.00 the balance under the said contract * * *". We do not regard the foregoing allegation of defendant's answer as a waiver of his right to claim damages. It is merely a statement that, if the plaintiff had performed the contract, defendant would have been willing, under those circumstances, to remit his claim. However, since we find that plaintiff has failed to perform, the defendant was well within his legal rights to claim the amount of damage occasioned by his building as the result of plaintiff's work. Plaintiff further contends that the contract does not provide that it should be liable for damage caused to defendant's building. This proposition is without merit for it is clear that a contractor is always responsible under the law of contracts for the damages occasioned to the owner resulting from his failure to perform his work properly.

Finally, the defendant makes claim, under his reconventional demand, for recovery of the sum of $3.90 per month from September 30, 1937, representing the increase in his insurance rate resulting from plaintiff's failure to provide the necessary sprinklers contemplated by the contract. No proof was adduced by him to sustain this charge and it is therefore disallowed.

For the reasons assigned, the judgment appealed from, insofar as it dismisses plaintiff's demand as of non-suit, is amended so as to dismiss plaintiff's suit absolutely and, as thus amended, the judgment is affirmed.

It is further ordered that the judgment appealed from, insofar as it dismisses the reconventional demand of the defendant, is annulled, avoided and reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of Jacob Rabinowitz, defendant in suit and plaintiff in reconvention, and against Fire Protection Equipment Company, Inc., plaintiff in suit and defendant in reconvention, for the full sum of $221 with legal interest thereon from judicial demand until paid and for all costs.

Amended and affirmed in part. Reversed in part.