Dr. W.H. Pierson, a defendant herein, acting as the agent of the Commercial National Bank in Shreveport, Louisiana, trustee of the heirs of W.F. Johnson, deceased, entered into a verbal contract with J.S. Jones, also made defendant, whereby said Jones, for $495, agreed to re-roof a certain building in the City of Natchitoches, Louisiana, owned by said heirs and then occupied by plaintiff, West Brothers, as tenant of the owners. Under the terms of the agreement, Jones was obligated to furnish all material and labor needful to the fulfillment of the contract. His relation to the owners was that of independent contractor. A heavy rain fell while the work was in progress, causing damage to plaintiff's merchandise to the admitted amount of $228.73. *Page 73 
Plaintiff, a commercial copartnership, instituted this suit against Dr. Pierson and his brother, James T. Pierson, and Jones to recover judgment for said damages. The Piersons are sought to be held responsible on the theory that they were the lessors of plaintiff when the contract with Jones was made and the damage sustained. Defendants are sued as joint tort-feasors. Plaintiff alleges: "Particularly shows that while the roof was thus left unprotected, a heavy rain fell resulting in a great quantity of water finding its way through the uncovered roof and through the ceiling onto a large quantity of merchandise, thus inflicting heavy damage on your petitioner by reason of the grossest carelessness and and negligence of the said J. Sompayrac Jones, the said James T. Pierson and the said William H. Pierson who, acting in concert, made no provision to protect your petitioner's property against the hazards of rain and without previously informing petitioner in order that it might have taken some measure to protect its merchandise against the hazards of the weather."
Defendant Jones avers that he was employed by Dr. Pierson, James T. Pierson and the heirs of W.F. Johnson, all of whom he alleges to be the owners of the building, to put a new roof thereon; that he did not agree with either the plaintiff nor said owners to insure them against damages from rain and did his utmost to protect plaintiff and the owners from damage therefrom; that "showers were falling around the community" at the time this work was done and that he warned Dr. Pierson of the danger of damage therefrom; that he was advised by the doctor to begin the work or he would get someone else to do it; that he warned the said owners that if it rained he was not to be held responsible for the resulting damages; that he was guilty of no neglect in re-roofing the building. In the event judgment is rendered against him, he prays for like judgment against said alleged owners as warrantors.
The Piersons deny liability to plaintiff and specifically aver that they did not own the property when the damage was sustained; that at that time it was owned by the heirs of W.F. Johnson and that plaintiff's occupancy thereof was as tenant of said heirs. They allege that the contract to re-roof the building was between Jones and the heirs of W.F. Johnson, through said bank as trustee.
Plaintiff's demand was rejected and it appealed.
Appellee has moved to dismiss the appeal because of alleged defects and irregularities in the execution of the appeal bond, and the justification of the surety thereon. Issues of this character come too late when raised in this court. The trial court retained jurisdiction in the case to the degree necessary to adjudicate such questions, and to that tribunal the motion should have been addressed. Act 112 of 1916. The motion is denied.
Plaintiff, in the lower court, moved for judgment against the Piersons on the face of the pleadings on the ground that they did not specifically and expressly deny the article of the petition which charged that they and Jones were indebted unto plaintiff for the full amount sued for. The answer to this article reads as follows: "Your respondents neither admit nor deny the allegations of paragraph 3 due to lack of information and leave the matter entirely to this Honorable Court for determination."
The Pleading and Practice Act (No. 157 of 1912, as amended by No. 300 of 1914 and by No. 27 of 1926) requires that each allegation of fact of the petition shall be specifically admitted or denied by the defendant. Defendants herein did not do this. However, in answering other articles of the petition, they did specifically deny liability to plaintiff to any extent or in any manner. Such answers are sufficient to defeat the motion. It was properly overruled.
As stated infra, the property involved herein was not owned by the Piersons when the contract with Jones was made. At that time they were negotiating to buy it. They did subsequently acquire it but the record does not disclose the date of the acquisition. It was agreed between them and the bank as trustee, that if the sale was closed they would pay Jones the contract price for putting the new roof on; if not closed, of course, the trustee would do so. In keeping with this agreement, the Piersons did, for the account of Jones, pay the furnisher of material used in the work $215. Therefore, since the Piersons were not the owners of the building nor the lessors of plaintiff when the damage sued for arose, nor parties in either capacity, to the contract with Jones, they may not be held *Page 74 
responsible for said damages. The cases cited by plaintiff, to wit, Smith v. Female Orphan Asylum, 1 La. 547 and Clark v. Engelhardt, 9 La.App. 334, 120 So. 498, are not pertinent.
This leaves for disposition the question of liability of Jones for the damage sustained by plaintiff.
The record discloses that plaintiff was not directly requested to allow the building to be recovered. Its members likely knew that the work was contemplated before it actually began. The roof leaked, therefore, the necessity of putting on a new one. Under Art. 2700 of the Civil Code the tenant must suffer repairs to be made to the leased premises if they cannot well be postponed until the expiration of the lease. This article prescribes the relative rights of lessor and lessee when repairs to the premises are made by the former.
There can be no question of a lessor's liability to his tenant for damage resulting from the contractor's neglect and carelessness, such as is sued for herein. The two cases cited by appellant, supra, and Bonnecaze v. Beer, 37 La.Ann. 531, and Lazare Levy Company v. Madden, 116 La. 374, 40 So. 766, establish this principle beyond question. This principle is an exception to the general rule that a contractee is not responsible in damages for the neglect of an independent contractor or his agents or servants. An independent contractor may be held in damages to third persons because of his or his servant's negligence or carelessness. This principle is one of general recognition. In this state it finds legislative sanction in Art. 2315 of the Civil Code, wherein it is said: "Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it * * *".
Therefore, if the damage suffered by plaintiff is ascribable to the neglect and carelessness of Jones, both he and the lessors are in solido responsible therefor as joint tort-feasors.
The testimony leaves no doubt of the negligence and carelessness of Jones as the sole cause of plaintiff's goods being damaged. It does not sustain the contention that Dr. Pierson individually or as agent for the trustee released Jones from liability for damages resulting from rains. Had he done so, plaintiff, not a party to such agreement, would to no extent be bound thereby.
The roof in question is 80 feet by 48 feet. It slopes from the front. It had been previously covered with composition paper roofing material. The new roof was to be of similar material, described as "five-ply built up", which means that the rolls of material, 36 inches wide, are laid across the sheathing with 17 inches exposed and 19 inches covered. After the base sheet is laid, asphalt is applied to its surface and another sheet laid thereon. This process is repeated until the required number of plys have been laid. Of course, before the new material is applied the old must be removed. When this has been done, the nails drawn, and the surface of the sheathing made perfectly smooth, the new roofing may be applied.
Jones, with a crew of three or four men, began work on the roof on a Saturday morning. That day they removed between one-half and two-thirds of the old roofing and laid a new base or "felt" sheet thereon. Another sheet may have been laid upon this one but the record does not make it clear that such was done. It is immaterial to the issues. At all events, this newly applied material was adequate to protect the interior of the building from rain that fell the following afternoon, save for a small part of the front end of the building. Some damage was done there. No work was done the following day (a Sunday), although Dr. Pierson testified that Jones specifically agreed to work that day in order to complete the job as quickly as possible.
Work was resumed on Monday morning. Whether additional plys were first laid on the portion of the roof removed the previous Saturday is not shown. All of the remainder of the old roofing was removed by the noon hour except a strip 8 or 10 feet wide, entirely across the lower end of the roof. This exposed space, about 30 feet by 48 feet, was left uncovered and unprotected from rain when the entire crew went away for the noon meal. At that hour the elements did not strongly indicate rain that afternoon, but clouds were visible. It did rain the previous afternoon, and had done so intermittently for several days. Jones admits that when the work was begun "showers were falling around the community." During the *Page 75 
noon hour the prospect for rain became imminent. The clouds were thickening and lowering. These conditions so alarmed Mr. S.E. West, a member of plaintiff firm, that he called Dr. Pierson on the 'phone and imparted to him his anxiety over the situation. Dr. Pierson immediately got in touch with Jones and urged him to push the work as rapidly as possible on account of the threatening rain. He and crew returned to the building about 1:30 o'clock. Instead of uniting their efforts to covering the exposed area, they proceeded to remove the remainder of the old roofing thereby increasing the size of the unprotected area. They then proceeded to the laying of the base sheet on the exposed surface, beginning at the top. The task had not nearly been completed when the rain broke. Strips of roofing were hastily laid over practically all of the unprotected surface but all were not nailed. Boards and ladders were placed on these un-nailed strips in the hope of holding them in place. This was not entirely successful as the wind which accompanied the rain blew much of the hastily laid roofing away, allowing water in copious quantities to pour through and upon the merchandise located in the rear 35 feet of the building, causing the complained of damage.
The testimony of several building contractors conclusively proves that in view of weather conditions then prevailing, it was highly imprudent and unworkmanlike for such a large area of the roofing to be removed and the sheathing left exposed at the noon hour; that after removing this quantity of the old roofing, the sensible and customary thing to have done was to stay on the job until this surface had been made reasonably secure against damage from rain; that it was obviously imprudent to have removed the remaining strip of the old roof, 8 or 10 feet wide, before the already unprotected area above it was made secure against rain.
The testimony also shows that the customary and safest rule to follow in laying a new roof of this character on such a large area, is to tear away units of the old roofing of such width that the exposed area may within a brief time be recovered. Weather conditions, of course, enter into and to a material extent control prudent modus operandi.
In this case, Jones was aware, as his answer and testimony reveal, that showers were falling in the community almost daily. This alone should have motivated him to exercise unusual precaution to protect the building and its contents from damage in case it did rain. If he assumed it would not rain or that if it did he could hastily ward off damage therefrom, yet it came and the damage was done, the responsibility is his. He has been engaged in the roofing business for seventeen years and certainly in this period should have learned of the vicissitudes of the weather sufficiently to guard against changes, even though arising suddenly. He did not exercise ordinary care to guard against that which did happen. He owed a plain duty to the tenant, which he, without justification, breached.
We have found no case wherein the tenant sued the independent contractor for damages of the character involved herein. In all cases reported, the suit for such damages was directly against the owner. However, the case of Madison Lumber Company v. Alson, 13 La.App. 603, 128 So. 46, and that of Fire Protection Equipment Company v. Rabinowitz, La.App., 194 So. 733, by analogy, support the conclusion that the contractor is also responsible to the tenant for damages inflicted through his negligence. This would appear elemental.
For the reasons herein assigned, the judgment appealed from in so far as it rejects plaintiff's demands against Dr. W.H. Pierson and James T. Pierson is affirmed; but in so far as it rejects plaintiff's demands against J.S. Jones, is reversed, annulled and set aside. And there is now judgment in favor of plaintiff, West Brothers, and against defendant, J.S. Jones, for the sum of $228.73, with legal interest thereon from September 1, 1939 until paid, and costs of court. *Page 76