146 So.2d 474 (1962)
Frank E. CRUTTI, Plaintiff, Appellant-Appellee,
v.
Martin L. FRANK, New Amsterdam Casualty Company, Ocean Accident & Guarantee Corp., Ltd., Great American Insurance Company, Universal Sheet Metal Works, Partnership and the Partners, Levy Broussard, Adolph Trahant and Peter McCullough, Defendants, Appellants-Appellees.
No. 572.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1962.
Rehearing Denied November 26, 1962.
*475 Frank J. Rabito and Cameron C. McCann, New Orleans, for plaintiff-appellee.
S. Sanford Levy, New Orleans, for Martin L. Frank, defendant-appellee.
Loeb & Livaudais, Stanley E. Loeb, New Orleans, for Ocean Accident and Guarantee Corp., Ltd., defendant-appellee.
Lemle & Kelleher, Carl J. Schumacher, Jr., New Orleans, for defendant, New Amsterdam Casualty Co., appellant.
Christovich & Kearney, A. R. Christovich, New Orleans, for Great American Ins. Co., appellant.
Daniel A. McGovern, III, New Orleans, for Universal Sheet Metal Works, appellant.
Before CULPEPPER, PONDER and McGEE, JJ.
*476 WILLIAM H. PONDER, Judge ad hoc.
This is an action in tort for personal injuries, medical expenses and loss of earnings by reason of an accident allegedly suffered by the plaintiff, Frank E. Crutti, on January 29, 1960 as a result of being struck on the head by a falling ladder owned by the defendant Universal Sheet Metal Works.
Plaintiff alleges that at the time of the accident, a thirty-foot extension ladder was being used in connection with the construction of a building situated in the City of New Orleans and fronting on Earhart Boulevard; that said extension ladder was negligently placed against the building and not properly secured, and alleging other acts of negligence in connection with the placing and use of the ladder on the building. That on the afternoon of the accident, while standing outside in front of the building on the Earhart Boulevard side, he was struck on the head by the ladder falling; suffering a broken neck, a severe gash in his scalp and other injuries as set forth in the petition.
This suit was brought by the plaintiff against Martin L. Frank, the lessor of the land upon which the building was being constructed; New Amsterdam Casualty Company, the insurer of the lessee Sidney Sharpe Stanfield, architect and owner; Ocean Accident & Guarantee Corporation, Ltd., insurer of Lakeside Construction, Inc., the general contractor; Great American Insurance Company, insurer of Conditioned Air Company, Inc.; and Universal Sheet Metal Works, a partnership and the partners, Levy Broussard, Adolph Trahant and Peter McCullough.
All of the above defendants have answered in substance by general denial, with the alternative or affirmative plea of contributory negligence on the part of the plaintiff.
It appears from the evidence that Sidney Sharpe Stanfield leased from Martin L. Frank the portion of land upon which the building was being constructed, under a ninety-nine year lease. In order to finance the building, Martin L. Frank, who was the owner of the land, signed for the benefit of lessee certain mortgages on the building. In the construction of the building Stanfield employed Lakeside Construction, Inc. as the general contractor. Excluded from the general contract were: Air conditioning and heating; plumbing; steel and erection; and piling. In accordance with the said exclusions, Stanfield entered into a separate contract with Conditioned Air Company, Inc. for the air conditioning of the building. Conditioned Air Company, Inc. employed Universal Sheet Metal Works, a partnership composed of Levy Broussard, Adolph Trahant and Peter McCullough, to install the sheet metal work, including ducts and other accessories in connection with the air conditioning of the building. Plaintiff in this suit was a contractor laying out the masonry and brick work under a subcontract with the general contractor Lakeside Construction, Inc.
The trial in lower court resulted in a judgment dismissing the suit of the plaintiff as to the defendants Martin L. Frank and Ocean Accident & Guarantee Corporation, Ltd. There was judgment in favor of the plaintiff and against the defendants, Great American Insurance Company, Universal Sheet Metal Works and its partners, Levy Broussard, Adolph Trahant and Peter McCullough, and New Amsterdam Casualty Company, jointly, severally and in solido, in the sum of $3,500 for personal injuries, without itemizing, and $485.45 for medical expenses. From this judgment the plaintiff has devolutively appealed that portion of the judgment dismissing his demands as set forth above. Also, from this judgment the defendants, New Amsterdam Casualty Company and Great American Insurance Company, have suspensively appealed; and Universal Sheet Metal Works and its three partners have devolutively appealed. Plaintiff has answered the appeals praying for an increase in the amounts awarded in the *477 judgment to those claimed in the original petition.
It appears from the evidence in this case that the building, which will be hereinafter referred to as the Stanfield building, was being erected by Sidney Sharpe Stanfield, and in connection therewith he entered into a contract with Conditioned Air Company, Inc., a Louisiana Corporation, under an A.I.A. short form agreement between contractor and owner for small construction contracts. This work consisted of, among other things, the installation of ducts to be used for air conditioning. In accordance with this contract, the Conditioned Air Company, Inc. made arrangement to have the duct work installed by Universal Sheet Metal Works. It is contended by the insurer for Conditioned Air Company, Inc. that this was a subcontract by verbal agreement; whereas, plaintiff contends that Universal Sheet Metal Works, and its agents and employees, were employees of Conditioned Air Company, Inc.
It is not disputed that on the afternoon of the accident Mr. Broussard and Mr. Trahant, members of the partnership of Universal Sheet Metal Works, arrived at the building site at approximately three o'clock, P.M. They unloaded and placed against the building the thirty-foot extension ladder and Mr. Trahant climbed the ladder. He testified that he tied the ladder with a manila rope to a plumber's stack, being a cast iron cylindrical vent pipe three or four inches in diameter. It was uncontroverted that this was an extremely windy day, and after working on the roof for some forty-five minutes, the defendant workmen decided that it would be better to handle the duct work from the inside. Accordingly, they came down the ladder and left it standing on the outside of the building, and went inside to resume working. Mr. Broussard was on the first floor passing the duct work to Mr. Trahant, who was on the second floor of the building. After working inside for about twenty-five minutes, Mr. Broussard heard a commotion on the outside of the building and heard the plaintiff cry out. He called to Mr. Trahant and then went out and found the plaintiff lying on the ground, bleeding from a gash in the head. He also found that the ladder which they had placed on the side of the building was lying on the ground in close proximity to the plaintiff and parallel to the building.
Plaintiff testified that he had discharged his men, had seen that they placed the tools in the place provided for tools by the general contractor, and was walking toward the building to report to the general superintendent, Mark Bendish, who was inside the building; that before he reached the place where the ladder was, he was struck and knocked unconscious. That he did not see the ladder at the time or prior to the accident.
There were no eyewitnesses to the accident itself, but our learned brother of the lower court found as a question of fact that the circumstances were such as to leave no other reasonable conclusion except that the ladder fell and struck the plaintiff. After a careful consideration of the evidence, we concur in this opinion. We might further observe that the evidence in this case is so strong that it excludes any reasonable hypothesis that the accident could have happened in any other manner. This is further substantiated by the statement signed by the two defendant workmen on February 23, 1960, in which they admit that the ladder fell and struck the plaintiff on the head. Also, the witness Mark Bendish testified that one of the two workmen told him immediately after the accident that the ladder had struck the plaintiff on the head.
Under the provisions of LSA-R.S. 40:1672, pertaining to Building Regulations, it is provided:
"All scaffolds, hoist cranes, stays, ladders, supports, or other mechanical contrivances erected by any person for use in the erection, repairing, alteration, removing, or painting of any building, bridge, viaduct, or other structure shall *478 be constructed, placed, and operated so as to give proper and adequate protection to any person employed or engaged thereon or passing under or by it, and in such a manner as to prevent the falling of any material that may be used or deposited thereon."
The conclusion is inescapable that the defendant workmen either did not tie the ladder to the plumber's vent, or if it were tied, that it was not tied in such a manner as to prevent the falling of the ladder. It will be noted that the superintendent for the general contractor, who was in the building at the time, noticed the ladder immediately after the accident and testified that there was no rope tied to it. There is no explanation in the record as to what became of the rope, if one was in fact used. We are of the opinion that the evidence establishes negligence on the part of Universal Sheet Metal Works in not placing and securing the ladder properly and that this negligence was the proximate cause of the accident. We are also convinced that the plaintiff was not contributorily negligent.
In view of the determination that the negligence of Universal Sheet Metal Works was the proximate cause of the injury, this brings us to the consideration of which, if any, of the other defendants are responsible with the Universal Sheet Metal Works and its partners for the consequences of their negligence. LSA-C.C. Article 2320, provides in part as follows:
"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed. * * *"
From a consideration of the evidence we must determine that the Conditioned Air Company, Inc. was an employer of Universal Sheet Metal Works for the construction of the sheet metal work on this job. The contention by this defendant that there was a verbal contract under which the partnership was an independent or subcontractor is neither sound nor tenable. The evidence preponderates that the partnership and its partners were employees of Conditioned Air Company, Inc. This is borne out by the fact that it furnished to the partnership all of the materials necessary for the installation and advanced money to them from time to time, even to the extent of advancing more than would be due. Also, there was complete control and supervision daily of the work and activities of the partnership by Conditioned Air Company, Inc. The work was performed without any set plans or specifications, but only at and under the direction of the superintendent of Conditioned Air Company, Inc. Therefore, the relationship existing was one of employer and employee, rather than that of an independent or subcontractor.
It is not disputed that Great American Insurance Company is the liability insurer of Conditioned Air Company, Inc. Therefore it is liable in solido as the insurer for the damages sustained.
Also made defendant in this case was Ocean Accident & Guarantee Corporation, Ltd., insurer of Lakeside Construction, Inc. We do not find that there could be any liability on the part of Lakeside Construction, Inc. for the reason that the evidence preponderates that it had no control or supervision of the air conditioning installation. Although Lakeside Construction, Inc. was the general contractor, the air conditioning was specifically excluded from its contract. Since we find that there was no liability as to Lakeside Construction, Inc., it naturally follows that its insurer, Ocean Accident & Guarantee Corporation, Ltd. is without liability herein.
Also made defendant herein is Martin L. Frank, the owner of the land upon which the Stanfield building was erected and who executed the lease to Sidney Sharpe Stanfield as lessee. Plaintiff contends that Martin L. Frank was a joint adventurer with *479 defendant Stanfield in the erection of the building. There is no evidence that there was any intent by the lessor and lessee to create a joint venture. In the case of Hero & Company v. Farnsworth & Chambers Co., 236 La. 306, 107 So.2d 650, 655, decided by the Supreme Court, it was held:
"`As between the parties, the general rule with reference to joint adventures or special partnerships is that the relationship arises only where the parties intended to associate themselves as such.'
"As to the legal effect toward third parties of the various activities carried on by both parties under their agreement, we are equally convinced that no joint venture was created. There are no hard and fast legal rules fixing the requisites for a joint venture; each case must be considered sui generis and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be labeled a `joint-adventure'."
It is well established in our law that "there can be no joint venture or common enterprise of legal import unless there be a community of interest in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto. Each party must have some voice and right to be heard in its control or management. * * *" (Citing several cases) Hawkins v. Travelers Indemnity Co., La. App., 73 So.2d 348.
In this case there was no evidence of a relationship existing between Martin L. Frank and Sidney Sharpe Stanfield other than as owner and lessor of the land and as lessee. None of the contracts show that defendant Martin L. Frank was a party thereto, nor is it shown that he had any right or supervision or control or direction of the building operations or of any of the work performed thereunder. The lease itself provides only for a stated rental to be paid as fixed therein. Therefore, we find that there is no liability on the part of the lessor, Martin L. Frank.
In a consideration of the liability of New Amsterdam Casualty Company, insurer of Sidney Sharpe Stanfield, it was held by the lower court that Conditioned Air Company, Inc. was an employee of Stanfield and that the said Stanfield was responsible for the negligence of Conditioned Air Company, Inc. We believe this holding of the lower court is in error. There is filed herein as "P-4" an A.I.A. short form for small construction contract, which was the agreement between contractor and owner. This agreement was between Conditioned Air Company, Inc. and S. Sharpe Stanfield, and provided for the complete heating and cooling installation in the Stanfield building. In its provisions, the owner agreed to pay to the contractor the sum of $8,878; ninety percent of that payable upon completion of the job, and the remaining ten percent thirty days later. There was also the provision that the work was to be performed in accordance with drawings and that the contractor, Conditioned Air Company, Inc., should provide and pay for all materials, labor, tools, water, power and other items necessary to complete the work. Also there was a provision that all workmen and subcontractors should be skilled in their trades, which would lead to the logical conclusion that the workmen and subcontractors were to be hired by the contractor. There was also the provision that the contractor should permit and facilitate inspection by the owner and his agents and public authorities at all times. In this case the owner of the building, Stanfield, was also the architect working through the architectural firm of S. Sharpe Stanfield, and Associates.
In the case of De Cuers v. Crane Co., La.App., 40 So.2d 61, 68, decided by this court, it was held:
"It is well settled that where a contractor undertakes to do work for *480 an owner under a contract which provides that the owner shall furnish the plans and specifications and that his only right shall be to insist that the job be done in accordance with those plans and specifications, the contractor does not become the agent or employee of the owner. Therefore, the owner is not liable to third persons who may be injured through fault of the contractor or his employees. Robideaux v. Hebert, 118 La. 1089, 43 So. 887, 12 L.R.A.,N.S., 632; Crysel v. Gifford-Hill & Co., La.App., 158 So. 264; West Bros. v. Pierson, La.App., 2 So.2d 71."
Further, the owner is not responsible for any negligence of the independent contractor, Daroca v. Metropolitan Life Ins. Co., 5 Cir., 121 F.2d 917 (and cases cited therein.)
The evidence in this case is not sufficient to convince us that the relationship between Stanfield and Conditioned Air Company, Inc. was other than that of an owner and an independent contractor. We are therefore of the opinion that the judgment of the lower court, holding that Conditioned Air Company, Inc. was an employee rather than an independent contractor was in error and the suit should have been dismissed on this demand of plaintiff. It follows that there would be no liability as to the insurer of Stanfield, New Amsterdam Casualty Company.
Having arrived at the determination of negligence hereinabove and the liability therefor, this leads us to a consideration of the amounts to be recovered for personal injuries, medical expenses and loss of earnings.
After a careful review of the medical and other testimony herein, we find that the defendant suffered a painful and discomforting injury, but not necessarily a very serious one. There was no fracture and the medical testimony reveals that the plaintiff has a bony abnormality, considered congenital, of the bony makeup of the first and second cervical vertebrae, which was a congenital anomaly and existed before the accident. This condition is also called a spina bifida occulta. One of the medical experts testifying for the plaintiff did not examine the plaintiff until fourteen months afterwards, which was the first time, and testified that the injury aggravated this pre-existing and congenital abnormality; but the lower court found that there was no aggravation, and we do not think the weight of the medical and other testimony supports the conclusion of this medical expert. We might also observe here that the plaintiff's treating physician, Dr. J. A. Colclough, was not called by the plaintiff as a witness, and there is no explanation as to why this was not done.
The evidence shows that the plaintiff suffered a blow on the head, causing a laceration of the scalp; that soon after the injury he got up and walked to the tool house and was carried to a hospital, treated and released. This accident happened on Friday afternoon and he was back on the job the following Monday morning, laying out and supervising the work (and was running not only this job, but other jobs.) He then went to the hospital where he remained approximately five days, being in traction, and was given a plastic cervical collar to wear, which he wore intermittently for a while thereafter; but the pain and discomfort was not such that it prevented him from working.
The evidence shows that in connection with the injury the plaintiff incurred medical expenses in the sum of $484.45. Further, plaintiff claims the sum of $57,500 for loss of earnings; but the evidence in this case, as shown by the income tax returns, shows that he earned more during the year following his injury than he had the previous year. There is not shown to be any loss of earnings as a result of the injury.
As to whether or not there will be any future medical expenses and loss of earnings, there is not sufficient evidence to *481 substantiate this, and it would be purely speculative and conjectural, such as would not admit of damages. We find therefore that the judgment of the lower court allowing the sum of $3500 for personal injuries and the sum of $484.45 for medical expenses is neither inadequate nor excessive.
For the reasons assigned, the judgment of the lower court, insofar as it awarded the plaintiff, Frank E. Crutti, judgment against New Amsterdam Casualty Company is reversed, annulled and set aside, and the suit against it is dismissed. In all other respects the judgment appealed from is affirmed. All costs are assessed in solido against the defendants, Great American Insurance Company and Universal Sheet Metal Works, the partnership and the partners, Levy Broussard, Adolph Trahant and Peter McCullough.
Reversed in part and affirmed in part.